# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| United States, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     v. | ) | Case No: 17 CR 50017 |
| | ) | |
| Todd J. Fendler, | ) | |
| | ) | |
|     *Defendant*. | ) | Judge Frederick J. Kapala |

## MEMORANDUM OPINION AND ORDER

At the close of the bifurcated sentencing hearing, the court took under advisement the defendant's objections to the offense level computation contained in the presentence investigation report. In particular, the defendant objects to (1) a 2-level enhancement under U.S.S.G. § 2B1.1(b)(10)(C), which applies if the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means;" and (2) a 2-level adjustment under U.S.S.G. § 3B1.3, which applies if the defendant "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." The government bears the burden of proof on both of these issues.

Before turning to the enhancements, a brief summary of the defendant's scheme to defraud is helpful. At the time his offense conduct began, the defendant was a licensed insurance producer in Illinois who owned and operated Northern Illinois Insurance Agency, Inc. and other related companies. As part of his business, the defendant sold insurance policies primarily to commercial clients. Although some clients were billed directly by the insurance company, many of the defendant's clients were billed through his own company, a practice which is referred to as "agency

billing" and was the defendant's preferred method of billing. These clients would submit payment for their premiums to the defendant's company, where the money was supposed to be held in a Premium Fund Trust Account until it was paid to the insurance company. Some clients would send a check after receiving their billing statement, while other clients provided their bank account information to the defendant so that their premiums could be debited directly from their bank account via Automated Clearing House ("ACH") transactions.

As part of his scheme to defraud, the defendant stole money from his clients primarily through the use of unauthorized ACH transactions. These unauthorized transactions included: (1) withdrawing an amount greater than the amount due from clients who had authorized ACH payments; (2) continuing to withdraw money from clients after their policy was closed or canceled; and (3) using the bank account number and routing information of his clients to create ACH withdrawals that were never authorized by the client. Over the years, the defendant changed the name of the ACH withdrawing entity from "N IL Ins Agency" to other names such as Northern Underwriting Managers and NIIB Sales, which caused some confusion among his clients. Towards the end of his scheme, the defendant also began using his clients' bank account information to create e-checks that were fraudulent but appeared to have originated from the client. In addition, the defendant would sometimes fail to forward the premium payment to the insurance company that was due, or he would alter the coverage of a policy without the client's knowledge or consent and keep the refunded premiums. The defendant's conduct led to numerous complaints from clients once they noticed the unauthorized withdrawals and even resulted in multiple revocations of the defendant's insurance license by the Illinois Department of Insurance, although each of those orders was stayed until a hearing could be held.

*Sophisticated Means*

The defendant objects to the 2-level enhancement under § 2B1.1(b)(10)(C) for sophisticated means, arguing that the probation officer's determination in the presentence investigation report that his conduct was "repetitive and coordinated" is not enough to support the enhancement. The government, on the other hand, contends that the enhancement is appropriate based on the defendant's "multi-year scheme that included multiple methods of stealing money from his victims and the use of ever-changing entity names." Although there is room for debate, the court cannot find by a preponderance of the evidence that the offense involved sophisticated means and sustains the defendant's objection.

The term "sophisticated means" is defined in the application notes as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." U.S.S.G. § 2B1.1, comment. (n.9(B)). The commentary further provides that "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." Id. The Seventh Circuit has explained that "[o]ffense conduct is sophisticated if it displays a greater level of planning or concealment than a typical fraud of that kind." United States v. Wayland, 549 F.3d 526, 528 (7th Cir. 2008). "The purpose of the enhancement is to deter elaborate efforts to avoid detection." United States v. Sykes, 774 F.3d 1145, 1153 (7th Cir. 2014).

Here, there is no question that the defendant was stealing money from his clients in a variety of ways over a lengthy period of time. But there was nothing particularly complex or intricate about the manner in which the defendant committed his fraud. By various means he simply took money out of his clients' bank accounts. The fact that the defendant used multiple entities to make the ACH

3

withdrawals brings this case closer to one of the examples of sophisticated means provided in the commentary to § 2B1.1, except that the entities the defendant used were not fictitious and using those alternative company names in this case did nothing to actually hide the fraudulent transactions from the defendant's clients. If anything, an ACH transaction that originated from an unknown entity might be easier to detect because it would raise more suspicion than a transaction which came directly from a company that already had an established business relationship with the victim. Moreover, the fact that the defendant's company received numerous complaints regarding these unauthorized transactions also strongly suggests that the defendant did not make elaborate efforts to avoid detection. Accordingly, the court sustains the defendant's objection and will not impose the 2-level enhancement under § 2B1.1(b)(10)(C).

*Abuse of Trust*

The defendant's next objection is to the 2-level adjustment under § 3B1.3 for abuse of trust. In his sentencing memorandum, the defendant argues only that this adjustment should not apply because he "obtained account numbers and routing numbers in the usual and routine course of business." In its response, the government insists that it was the defendant's position as a licensed insurance producer that gave him access and authority over his clients' bank account information and made it significantly easier for him to commit his fraud. The government also contends that the adjustment is warranted under Application Note 2(B) to § 3B1.3 because the defendant's scheme involved using a "means of identification" of his clients without authority.

In general, an adjustment under § 3B1.3 for abuse of trust is appropriate when (1) "the defendant occupied a position of trust," and (2) "the defendant's abuse of that position of trust facilitated his commission or concealment of the crime." United States v. DeMarco, 784 F.3d 388,

4

397 (7th Cir. 2015). According to Application Note 1, a position of trust is one that is "characterized by professional or managerial discretion" and ordinarily involves "significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." U.S.S.G. § 3B1.3, comment. (n.1). "In determining whether the defendant occupied a position of trust, we analyze the situation from the perspective of the victim." DeMarco, 784 F.3d at 397. Because "[t]here is an element of misplaced trust inherent in every fraud," an adjustment under § 3B1.3 requires "a showing that the victim placed more than the ordinary degree of reliance on the defendant's integrity and honesty." United States v. Fuchs, 635 F.3d 929, 935 (7th Cir. 2011) (citations omitted); see also United States v. Dorsey, 27 F.3d 285, 289 (7th Cir. 1994) ("[T]o impose a sentence enhancement for abuse of a position of trust, there must be something more than a mere commercial relationship between the parties.").

Here, there is no question that the defendant "had access and authority over the funds solicited from his clients," United States v. Stewart, 33 F.3d 764, 768 (7th Cir. 1994), and that these clients trusted the defendant to not steal money from their bank accounts. But that is true of any commercial relationship and is not enough to warrant an upward adjustment under § 3B1.3 and current Seventh Circuit precedent. See Fuchs, 635 F.3d at 934. There has been no showing that these victims "placed more than the ordinary degree of reliance on the defendant's integrity and honesty." Id. at 935. Indeed, it is not clear how many of these victims had even met with or knew of the defendant at the time they entrusted his company with their bank account information. Given these circumstances, the court cannot say that the defendant occupied a position of trust as that term is used in Application Note 1.

That being said, Application Note 2(B) provides that, "[n]otwithstanding Application Note 1, or any other provision of this guideline," the adjustment under § 3B1.3 "shall apply to . . . [a] defendant who exceeds or abuses the authority of his or her position in order to obtain, transfer, or issue unlawfully, or use without authority, any means of identification." U.S.S.G. § 3B1.3, comment. (n.2(B)). The term "means of identification" is defined by statute to include an "account number . . . that can be used . . . to obtain money . . . or that can be used to initiate a transfer of funds." 18 U.S.C. § 1029(e)(1) (defining "access device"); see also 18 U.S.C. § 1028(d)(7)(D) (defining "means of identification" to include an "access device" as defined in § 1029(e)).

Although the Seventh Circuit has not addressed this alternative basis for the adjustment under § 3B1.3, other circuits have held that Application Note 2(B) is an independent basis for applying the adjustment, even where the defendant does not otherwise qualify as occupying a position of trust. See, e.g., United States v. Cruz, 713 F.3d 600, 609 (11th Cir. 2013) ("We are persuaded that Lisandra's actions fall within the conduct addressed by application note 2. Thus, we need not address Lisandra's arguments regarding her lack of discretion in her position at Target or her lack of a fiduciary relationship with the victims." (citation omitted)); United States v. Godsey, 690 F.3d 906, 910 (8th Cir. 2012) ("We now face the question of whether Application Note 2(B) provides an independent basis for applying an adjustment under § 3B1.3. We hold that is does. . . . A failure to meet the definition of Application Note 1 does not affect whether Application Note 2(B) applies."); United States v. Abdelshafi, 592 F.3d 602, 611 (4th Cir. 2010) ("Abdelshafi's arguments in regard to his lack of discretion and fiduciary relationship with Medicaid are beside the point in the face of the plain reading of application note 2. We, therefore, do not address Abdelshafi's arguments in regard to either application note 1 or our precedents regarding its scope."

(footnote omitted)). This conclusion is supported by the examples provided in Application Note 2(B), which involve an employee of a state motor vehicle department, a hospital orderly, and a volunteer at a charitable organization. These are all examples of individuals who would not have occupied a position of trust from the perspective of the victim and would not have qualified for the adjustment under Application Note 1 to § 3B1.3 and the Seventh Circuit precedent cited above, but the adjustment still applies pursuant to Application Note 2(B).

In this case, the court finds that the defendant's offense conduct qualifies for an abuse of trust adjustment under Application Note 2(B). Throughout his scheme, the defendant created fraudulent ACH withdrawals by using the bank account numbers of his clients, which qualify as means of identification, without authorization. The defendant also created fraudulent e-checks by, once again, using the means of identification of his clients without their authorization. This conduct falls within the scope of Application Note 2(B), which is an independent basis to apply the adjustment for abuse of trust under § 3B1.3 notwithstanding the fact that, as the court noted above, the victims in this case did not place anything more than the ordinary degree of reliance on the defendant's integrity and honesty. Accordingly, the court overrules the defendant's objection to the 2-level adjustment under § 3B1.3.

Date: 7/30/2018

ENTER:

_____

FREDERICK J. KAPALA

District Judge